ALASKA STATEBANK, Appellant,

v.

Allen T. KIRSCHBAUM and Gisele Kirschbaum, Appellees.

No. 6488.

Supreme Court of Alaska.

April 8, 1983.

Peter C. Ginder, Kemppel, Huffman & Ginder, Anchorage, for appellant.

Herbert A. Ross, Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, and COMPTON, JJ., and CARLSON,* Superior Court Judge.

RABINOWITZ, Justice.

Alaska Statebank ("the Bank") appeals from an order granting partial summary judgment[1] in favor of Allen Kirschbaum.[2] The primary question on appeal is whether the Bank may seek a deficiency judgment against Kirschbaum in the event the proceeds of a judicial foreclosure sale of his encumbered property are insufficient to satisfy his debt to the Bank.

In the summer of 1979, Kirschbaum borrowed $350,000 from the Bank to refinance a residential subdivision in Kenai and to complete development of the Sea Scape Subdivision ("the land loan"). At about the same time Kirschbaum obtained a second loan from the Bank for $400,000 to finance the construction of homes on four lots in the subdivision ("the construction loan").[3] Both loans were secured by deeds of trust; the construction loan deed of trust covered the four lots upon which Kirschbaum was to build residences, and the land loan trust deed covered the remaining 54 lots in the subdivision. Each trust deed contained a "dragnet" clause which provided that the trust deed secured not only the indebtedness in connection with which it was executed but also any other debts owed by Kirschbaum to the Bank.[4]

Kirschbaum eventually defaulted on both loans. After extended discussions between Kirschbaum and the Bank concerning the terms upon which the 54 unimproved lots could be sold to a third party, the Bank declared the land loan in default and noticed a nonjudicial sale of the 54 lots securing that loan. The Bank subsequently acquired these lots with an offset bid. Thereafter, the Bank instituted judicial proceedings to foreclose on the remaining four lots for nonpayment of the construction loan and to establish its right to obtain a deficiency judgment against Kirschbaum should the four lots sell for less than the balance due on the construction loan.[5]

Kirschbaum contended that the Bank was barred from seeking a deficiency judgment against him by virtue of its decision to commence a nonjudicial foreclosure on a contiguous parcel of unimproved real property upon which the Bank also held a first deed of trust ("the land loan"). Kirschbaum further contended that during the negotiations preceeding the foreclosures, the Bank used the dragnet clauses to treat the

---

* Carlson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The superior court made a Civil Rule 54(b) determination "that there is no just reason for delay of entry of summary judgment in favor of defendant, Allen P. and Gisele Kirschbaum...."

2. Kirschbaum's wife Gisele is also a party, but she played no part in the events that led to this appeal.

3. Kirschbaum hoped that his building activities in regard to the four residences would spark interest in his subdivision. $100,000 of the $400,000 construction loan was immediately applied to the land loan; thus the total amount borrowed by Kirschbaum was $650,000.

4. A dragnet clause in a security agreement provides that the collateral secures not only the loan for which the security agreement was executed but also any other debt owed by the borrower to the lender.

The dragnet (or "future advances") clauses, which were separately initialed by Kirschbaum at the time the loan documents were executed, provide that "[i]t is expressly agreed that this deed of trust shall also stand as security for any other indebtedness, direct or contingent that the beneficiary may now hold or in the future acquire against the trustor."

In other words, because of the dragnet clauses the 54 lots securing the land loan also secured the construction loan, and the four lots securing the construction loan also secured the land loan.

5. Kirschbaum and the Bank appear to agree that the proceeds of the sale of the four lots will be substantially less than the amount due on the construction loan.

two loans as a single obligation.[6] Kirschbaum argues that the Bank, having already pursued a nonjudicial foreclosure on the two-loans-as-one, is barred by Alaska's anti-deficiency statute[7] from obtaining a deficiency judgment against him. In other words, Kirschbaum argued that a lender who invokes a dragnet clause thereby elects to treat two or more debts as a single obligation, and that the now single obligation is subject to Alaska's anti-deficiency statute.

In response to Kirschbaum's contentions the Bank argued that it never elected to rely on the dragnet clauses and, further, that the statements upon which Kirschbaum relies as evidence of such an election were made during settlement negotiations and therefore are inadmissible under Evidence Rule 408.

Kirschbaum moved for a summary judgment. The superior court ruled that the doctrine of estoppel prevented the Bank from obtaining a deficiency judgment against Kirschbaum.[8] This appeal followed.

## I. EFFECT OF THE DRAGNET CLAUSES

Apart from the Bank's evidentiary objection, the principal question in this appeal is whether the land loan and the construction loan should be treated as a single obligation. If the two loans are so treated, then Kirschbaum is correct when he states that the Bank may not obtain a deficiency judgment; for the very purpose of the anti-deficiency statute is to free him of personal liability once the Bank consummates a nonjudicial foreclosure. On the other hand, if the two loans are viewed as independent obligations, the Bank is free to pursue one remedy with respect to one loan and a separate remedy with respect to the other.

Kirschbaum asserts that the doctrines of estoppel and quasi-estoppel prevent the Bank from claiming that the two loans are independent obligations enforceable by separate remedies since the Bank treated the two loans as a single obligation during repayment negotiations. Alternatively, Kirschbaum argues that apart from notions of estoppel the two loans are inherently so interrelated that they should be viewed as a single obligation.[9]

## II. ESTOPPEL AND QUASI-ESTOPPEL

In regard to the doctrine of estoppel we have held that a party asserting estoppel must demonstrate, among other things, that he reasonably relied on another's rep-

---

**6.** Kirschbaum located a buyer willing to purchase the 54 unimproved lots, and the buyer, as well as Kirschbaum, entered into discussions with the Bank concerning the terms of such a sale. During the course of these discussions the Bank indicated that it would not release its security interest in the 54 lots should Kirschbaum or the buyer tender only the balance due on the land loan; rather, the Bank stated that it would require payment of a substantial portion of the construction loan as well before releasing its interest in the 54 lots. The Bank invoked the dragnet clauses as its authority for demanding more than the balance due on the land loan before surrendering the lots securing that loan.

The Bank's right to use the dragnet clauses in this manner is not contested on appeal. *See, e.g., First Nat'l Bank in Dallas v. Rozelle,* 493 F.2d 1196 (10th Cir.1974); *Wong v. Beneficial Savings & Loan Assoc.,* 56 Cal.App.3d 286, 128 Cal.Rptr. 338 (1976).

**7.** AS 34.20.100 provides that: "[w]hen a sale is made by a trustee under a deed of trust ... no other or further action or proceeding may be taken nor judgment entered against the maker

... on the obligation secured by the deed of trust for a deficiency."

**8.** The superior court in its oral ruling stated in part that "it seems clear to me that if there ever was a case for estoppel, this is a clearcut case." In its written order granting summary judgment to Kirschbaum the superior court provided in part:

[T]he amounts claimed by Alaska Statebank in this case as the result of the deed of trust note and deed of trust attached to plaintiff's complaint are not personal liabilities of the Kirschbaums, and ... no personal judgment shall be entered against them on those obligations....

**9.** We have not found any judicial precedent for the proposition that a lender is required to pursue identical remedies when trying to collect on separate overdue obligations, or for the proposition that a nonjudicial foreclosure on one obligation precludes a judicial foreclosure and deficiency judgment on a separate unrelated obligation.

resentation and that he would suffer some detriment if the other were now permitted to change his position.[10]  In the instant case the superior court did not articulate any reasons in support of its conclusion that summary judgment in favor of Kirschbaum on the issue of estoppel was appropriate, and thus we cannot tell why the superior court apparently believed that there were no issues of fact remaining relevant to the elements of Kirschbaum's estoppel claim. Nevertheless, it is our view that the Bank has presented a persuasive case that the issues of Kirschbaum's reliance on the Bank's representations and of the resulting detriment are genuinely open to dispute and thus were inappropriate for resolution by summary judgment.

■  The gist of Kirschbaum's estoppel argument is that he relied on the Bank's representation that he would not be able to take clear title to the 54 lots securing the land loan unless he paid a substantial portion of the construction loan as well as the full balance on the land loan, and that his reliance took the form of permitting the Bank to consummate a nonjudicial foreclosure and extinguish his rights in the 54 lots. Implicit in this assertion is the underlying assumption that Kirschbaum would have

been able to, and in fact could have, paid the balance due on the land loan and would have attempted to secure the release of the 54 lots had the Bank not represented that it would not accept tender of only the amount due on the land loan.  In other words, Kirschbaum's estoppel argument depends on his ability to show that events might have turned out differently had the Bank not made the alleged representation.  The record indicates, however, that Kirschbaum was never able to pay even a fraction of the balance due on the land loan, much less tender payment of the full amount owed to the Bank.  If Kirschbaum could not have avoided foreclosure in any event it is not apparent to us how it can be said that he detrimentally relied on the Bank's representation.[11]  Thus we hold that the superior court could not have decided the question of detrimental reliance on the record presented and that summary judgment in Kirschbaum's favor on the ground of estoppel was improper.[12]

■  Kirschbaum's alternative theory of estoppel is that of quasi-estoppel.  In *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102–03 (Alaska 1978), we explained that reliance is not an element of a claim based on quasi-estoppel.  Rather,

---

10.  *Jamison v. Consol. Util., Inc.,* 576 P.2d 97, 102 (Alaska 1978); *Arctic Contractors, Inc. v. State,* 564 P.2d 30, 40 (Alaska 1977).

In *Jamison* the elements of equitable estoppel were identified as follows:
The general elements required for the application of the doctrine of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice.
576 P.2d at 102 (footnote and citation omitted).

11.  Kirschbaum did find an investor who was willing to pay at least the amount due on the land or development loan in exchange for the 54 lots; that investor eventually backed out of the deal.  We think that at best, evidence of this investor's interest raises one issue of fact; it does not establish Kirschbaum's estoppel claim.  There still remain: whether the investor would have backed out had the Bank not demanded a greater sum than that due on the land loan before releasing the 54 lots, and whether the investor's proposal, which did not provide for immediate cash payment of the balance due on the land loan, would have been acceptable to the bank.

12.  The Bank persuasively argues that genuine issues of material fact remained to be resolved. In the Bank's view these are as follows:
1.  Did an officer, representative, agent or servant of Alaska Statebank at any time affirmatively represent to Mr. and Mrs. Kirschbaum, their counsel or agents, that it was consciously and knowingly invoking the provisions of the future advances clauses contained in the two deeds of trust held by the Bank so as to preclude resort to any other remedy?
2.  If the answer to the genuine issue immediately preceding is "yes," did Mr. and Mrs. Kirschbaum, their counsel or agents, reasonably rely upon said representation?
3.  If the answers to the two genuine issues immediately preceding are "yes," were Mr. and Mrs. Kirschbaum injured by their reliance upon said representations?
4.  Were Mr. and Mrs. Kirschbaum in fact financially capable, on March 4, 1981, of tendering a sum, in cash or certified check, equivalent to the delinquency which accrued on the unimproved land loan?
5.  Would Mr. and Mrs. Kirschbaum have in fact tendered a sum sufficient to cure· said

The essence of the doctrine of quasi-estoppel is the existence of facts and circumstances making the assertion of an inconsistent position unconscionable.[13]

■ Our review of the record persuades us that it cannot be concluded as a matter of law that the Bank's assertion and course of action were so offensive as to be unconscionable. First, the instant case arises out of a commercial context in which the party asserting quasi-estoppel on the basis of unconscionable conduct borrowed a total of $650,000 from the Bank. Second, any element of unconscionability is lacking on this record. As with the estoppel issue it is also relevant to resolution of the quasi-estoppel issue to consider whether Kirschbaum in fact suffered any detriment. On the record presented we hold that there remains a significant issue as to whether Kirschbaum's position would have been any better had the Bank not taken the course of action he questions in the litigation. We thus hold that the superior court's grant of summary judgment on the basis of quasi-estoppel was erroneous.[14]

## III. ADMISSIBILITY OF REPRESENTATIONS MADE BY THE BANK DURING SETTLEMENT NEGOTIATIONS

The Bank argues that Kirschbaum's claim arises only because the Bank mentioned the

---

delinquency at the time and place scheduled for public sale on the unimproved parcel of real property, had they not concluded that the Bank had invoked the provisions, of the future advances clause?

6. Would Alvin E. Hrubes, a third-party Anchorage developer and investor, have attended and appeared at the public sale on the unimproved parcel of real property had he known that the Bank was in fact not going to affirmatively elect to invoke provisions of the future advances clauses?

7. If Mr. Hrubes had in fact appeared at said public sale, would he have been financially capable of tendering a sum sufficient to cure the delinquency on the unimproved land loan, and would he have in fact done so?

8. If adequate tender had been made by Mr. and Mrs. Kirschbaum at the time of the public sale of the unimproved parcel of real property, in an amount sufficient to cure the default on the first of the two loans, would Alaska Statebank have at that time affirmatively elected to invoke the future advances clause and thereby have quoted Mr. and Mrs. Kirschbaum a cure figure inclusive of the sums owed on both of the two loans?

13. 576 P.2d at 102. In *Jamison* we also said: "Quasi-estoppel ... must be based on the previous assertion of a position so inconsistent with the one now taken as to make the present claim unconscionable." ... [I]n determining whether the doctrine of quasi-estoppel is applicable to the matter before it, the trial court should consider whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and whether the first assertion was based on full knowledge of the facts.

*Id.* at 102–03 (quoting *Fast v. Fast,* 209 Kan. 24, 496 P.2d 171, 175 (1972).

14. Kirschbaum advances two other grounds for affirming the superior court's decision: estoppel by deed and election of remedies. Estoppel by deed is irrelevant to this litigation. The election of remedies argument is simply a reiteration of the argument previously advanced in support of the equitable estoppel and quasi-estoppel claims.

We note an additional argument advanced by Kirschbaum. He relies on one case, *Union Bank v. Wendland,* 54 Cal.App.3d 393, 126 Cal. Rptr. 549 (1976), holding that a creditor holding two deeds of trust on a piece of property who foreclosed on the first deed of trust could not bring a separate action against the debtor on the second deed of trust. The court reasoned that, because the first deed of trust contained a dragnet clause which drew the later loan within its purview, the second deed of trust was superfluous and merged with the first; since the creditor had foreclosed under the first deed of trust, no deficiency judgment was permissible. Kirschbaum suggests that this court should use the approach adopted by the *Wendland* court looking to the "relationship of the loans" and to the Bank's "reliance on the security" to determine whether the two loans, although nominally separate, were functionally a single obligation. Since the *Wendland* issue was not addressed by the superior court we think it inappropriate to dispose of this case on its rationale. Even if we were inclined to adopt the *Wendland* rule we note that factual issues remain unresolved as to whether the two loans are functionally integrated and whether the Bank relied on the lots securing the land loan when it made the second construction loan.

dragnet clause during settlement negotiations and that Evidence Rule 408 excludes evidence of statements made and positions taken during such negotiations. Evidence Rule 408 states:

> Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution, but exclusion is required where the sole purpose for offering the evidence is to impeach a party by showing a prior inconsistent statement.

According to the Bank, if the evidence upon which Kirschbaum relies is inadmissible that evidence cannot provide the basis for summary judgment. Further, the Bank makes an appealing policy argument that Evidence Rule 408 should be construed broadly to extend its privilege to the kinds of comments and representations that Kirschbaum contends are admissible. The Bank argues that lenders will be reluctant to meet with defaulting borrowers and help them work out their problems in a manner less drastic than foreclosure if statements made by lenders during such negotiations may subsequently be employed to defeat the lenders' claims. Kirschbaum counters that Rule 408 is by its terms inapplicable because the Bank's claim against him was

not "disputed as to either validity or amount."[15]

The crucial question is whether evidence of discussions and statements made at a time when the parties agreed on the validity and the amount of the claim, but were negotiating remedies, is excludable under Evidence Rule 408. In our view the answer to this question is supplied by the text of the rule. Rule 408 provides in part that evidence relevant to a claim "which *was* disputed as to either validity or amount is not admissible to prove liability." (emphasis added) This language indicates that the validity or amount of the claim must have been in dispute at the time that the statements sought to be admitted were made. In other words, the language of the rule does not require exclusion of the evidence upon which Kirschbaum bases his claims since they were made at a time when neither the validity nor the amount of the Bank's claim was disputed.

The superior court's grant of summary judgment in favor of Kirschbaum is REVERSED.

---

**15.** If a debtor concedes the validity of a creditor's claim and its amount, negotiations regarding the time and manner of repayment of the claim are not within the scope of Rule 408:

> [A]n admission of liability made during negotiations concerning the time of payment and involving neither the validity nor the amount of the claim is not within the rule's exclusionary protection.

2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 408[01], at 408–10 (1981). *See also* 2 D. Louisell & C. Mueller, Federal Evidence § 170, at 271 (1978) ("Nor does [the Rule] require exclusion of evidence when neither liability nor amount is disputed").