**UNION OIL COMPANY OF CALIFORNIA, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–3382.

Supreme Court of Alaska.

Sept. 28, 1990.

Rehearing Denied Jan. 25, 1991.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, for appellant.

David T. LeBlond, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In this appeal we must determine whether the Department of Revenue (DOR) correctly denied Union Oil Company of California's (hereinafter Union) request for a partial refund for tax years 1973 and 1974. Union calculates its tax liability using formulary apportionment instead of separate accounting. The DOR ruled Union's claim barred by *res judicata*. The DOR, however, decided Union's claim on the merits as well, ruling against Union's formulary accounting method. The superior court, sitting as an appellate court, affirmed the DOR's ruling on the merits, but did not address the issue of *res judicata*. We do likewise in this appeal.

### I

This case is related to *Union Oil Co. of California v. State, Dep't of Revenue*, 677

P.2d 1256 (Alaska 1984) (*Union I*). To understand the present litigation, it is necessary to briefly set forth our analysis in *Union I:*[1] Union protested the DOR's finding of a tax deficiency relating to Union's application of a tax-exemption Certificate granted to a Union subsidiary, Collier Carbon & Chemical (hereinafter Collier).[2] *Union I*, 677 P.2d at 1259. We upheld the DOR's construction of the exemption Certificate, whereby the amount of Collier's exemption was to be determined using separate accounting.[3] *Id.* at 1261–62. The exemption amount, however, could only be applied against the tax liability of the corporation granted the exemption, utilizing formulary apportionment, and not against the tax liability of other members of Union's unitary group of corporations[4] filing consolidated tax returns.

In other words, Collier's exemption was calculated using separate accounting to determine the amount of the credit. This credit was then applied to the actual tax liability of Collier under formulary apportionment. Thus, the tax deficiency for the tax years 1973 through 1977 was upheld, and Union's tax liability was assessed at $3,544,106 plus interest. *Id.* at 1259.

Subsequently, Union paid the tax, but protested part of the assessment and requested a refund. Union claimed $47,-612.50 for 1973 and $187,847 for 1974 as determined by formulary apportionment. In June 1984 the DOR informed Union that this court's decision in *Union I* precluded Union's request for a refund, asserting that the tax liability for the years 1973 and 1974 had already been litigated and, therefore, Union's claim was barred by *res judicata.* In February 1985 Union filed suit against the state for the refund plus interest, claiming that the industrial development income of the exempt business, Collier, should be credited by the disputed amounts under the formulary apportionment method.

In August 1985 the parties stipulated to a stay of the proceedings in superior court, to allow the DOR time to conduct an administrative review. An informal conference took place on November 8, 1985, and the results of that conference were adopted as the final administrative decision of the DOR.

In December 1986, in Revenue Decision 86–A–1, the DOR ruled Union's tax refund claims barred by *res judicata.* Alternatively, it concluded on the merits that formulary apportionment was improper for ascertaining the amount of Collier's industrial tax credit and that the separate accounting method was appropriate. In February 1988 Union appealed the revenue de-

1. The litigation between *Union I* and this case overlaps to such an extent that the parties agreed that the record in this case would be comprised of, among other items, "all items in the administrative record in the prior proceedings before DOR, the entire record from the Superior Court proceedings, and the entire record from the Supreme Court proceedings [in *Union I*]."

2. In 1969 the Commissioner of the Department of Economic Development granted Collier a tax exemption Certificate exempting Collier from, among other taxes, state income taxes.

3. Separate accounting takes the gross income of the business and deducts all allowable business expenses to arrive at a net taxable income. The net taxable income is multiplied by the applicable tax schedule rate to determine the tax liability. For purposes of the industrial income tax exemption Certificate, the tax liability is deemed a tax credit, zeroing out tax liability.
 Under formulary apportionment "[t]he property, payroll and sales fractions ('factors' under the statute) are averaged and an 'ideal' fraction is arrived at which reflects the degree of state connectedness of the business entity's [worldwide] income. Only this fraction of the entire income is then taxed by the state." *Earth Resources Co. v. State, Dep't of Revenue*, 665 P.2d 960, 963 n. 1 (Alaska 1983). "Because the apportioned income to a state depends on this world-wide apportionable income, it is not uncommon in a particular state for apportioned income to be greater or less than the income in the state if determined by the separate accounting method." *Union I*, 677 P.2d at 1258–59 n. 3.

4. Union is the parent corporation for the following wholly-owned subsidiaries: Collier, Woodland Development Company and Union Alaska Pipeline Company. Only Collier was granted the tax credit Certificate. Union files consolidated tax returns for these companies, and the dispute in *Union I* centered on offsetting the tax credits allowed to Collier with the tax liability of the other, non-exempt corporations. *Union I*, 677 P.2d at 1261.

cision to the superior court, claiming, *inter alia*, that "[t]he [DOR] erred in determining that consideration [of the tax refund claims] was barred by the doctrine of res judicata." Union also claimed the DOR decision was wrong with respect to the proper accounting method, was not supported by the record and was "arbitrary and capricious."

In April 1989 the superior court affirmed the DOR decision as to the method of accounting. The superior court also concluded that the state was not judicially estopped from arguing an opposing contention than one forwarded in prior litigation. Union now appeals the trial court's affirmance of the DOR decision.

## II

### A. *The Appropriate Standard of Review*

The parties disagree, in part, concerning the appropriate standard of review. Union argues that all issues before the court may be resolved by the exercise of this court's independent judgment. The DOR agrees that this court may exercise its independent judgment relative to the DOR's legal conclusion, *i.e.*, res judicata, but that a reasonable basis test applies with respect to the DOR's interpretation of tax statutes and tax policy.

In *Gulf Oil Corp. v. State, Dep't of Revenue*, 755 P.2d 372, 378 n. 19 (Alaska 1988), we held that where interpretation of a tax statute depends upon the " 'particularized experience and knowledge of the administrative personnel,' the reasonable basis test is the appropriate standard of review." *Id.* (quoting *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971)). Thus, determination of the appropriate standard of review necessarily turns on whether the question at bar implicates special agency expertise, or merely involves a question of statutory interpretation not involving agency expertise where statutory interpretation would not be aided by the agency's "specialized knowledge and experience." *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 & n. 11 (Alaska 1987).

The reasonable basis test is applied in either of two situations:

> First, . . . where the agency is making law by creating standards to be used in evaluating the case before it and future cases. Second, . . . when a case requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision.

*Id.* (quoting *Earth Resources v. State, Dep't of Revenue*, 665 P.2d 960, 964 (Alaska 1983)); *see also Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986). The independent judgment standard applies where the case implicates analysis of legal relationships to which courts are particularly well-suited. *National Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 815 (Alaska 1982) ("The independent judgment standard is used when agency expertise or the determination of fundamental policies are not involved.").

In *Union I*, we applied the reasonable basis test with regard to the DOR's interpretation of the exemption Certificate. *Union I*, 677 P.2d at 1260 ("If the state's interpretation of the contract is reasonable, that interpretation will control.").

We grant no deference to the superior court's decision when the superior court acts as an intermediate court of appeal. *Tesoro*, 746 P.2d at 903. Thus, "we independently scrutinize *directly* the merits of the administrative determination." *Id.* (emphasis added). We conclude that the DOR decision pertaining to the application of formulary apportionment is reviewable under the reasonable basis test as it construes the tax exemption Certificate. *See Union I*, 677 P.2d at 1260. In addition, the present case involves policy questions within the DOR's area of expertise that are inseparable from the facts underlying the DOR's decision. *See Tesoro*, 746 P.2d at 903.

### B. *The DOR's Decision To Impose Formulary Apportionment*

 Alaska Statute 43.25.040[5] deems the Exemption Certificate between Collier and the state a contract. As discussed in *Union I,* however, because tax exemption contracts are "in derogation of the sovereign authority and of common right,"[6] the Certificate is to be construed strictly against the exemption. *Union I,* 677 P.2d at 1260 & n. 7. Considerable deference is given to the state's interpretation of the exemption such that "[i]f the state's interpretation of the contract is reasonable, that interpretation will control." *Id.* at 1260. The taxpayer has a heavy burden of establishing that "the contract clearly and unequivocally extends the exemption beyond the state's interpretation" in order to prevail. *Id.* In short, there is a strong presumption in favor of the state's reading of the exemption because of "the disruption in the equality of taxation that an exemption creates." *Id.*

The DOR concluded, and the superior court agreed, that an exempt business under the Alaska Industrial Incentive Act, AS 43.25, is exempt from tax based "only upon its industrial development income," which is defined by statute, AS 43.25.150(a)(7), as that income derived from property devoted to industrial development. The DOR concluded that the intent of the exemption was to focus on the source of the income, which is better done by separate accounting. The DOR's decision stated:

> Thus, the difference between separate accounting and formulary apportionment is that the formula method does not attempt to identify the precise geographical source of income. Separate accounting looks to the source of income but formulary apportionment looks to activities within a state. It is this distinction between "sources" and "activities" that is important.

The DOR held that the tax exemption figure was properly arrived at under separate accounting in order to determine the amount of the credit, which is then applied to the actual tax liability of the exempt business under formulary apportionment.

Union argues that the income exemption must be calculated in the identical manner as actual tax liability. We held in *Union I* that actual tax liability could reasonably be computed by formulary apportionment; thus, Union contends exempt income should, out of fairness, be calculated in the same manner. Union characterizes the state's use of two methods for two calculations as an attempt by the state to "have [its] cake and eat it too." Union points out that the state had on previous occasions indicated that separate accounting was not necessarily required in calculating exempt income and credits.

The state posits that the DOR was never presented with this question before its formal revenue decision, 86–A–1. The superior court found no inconsistency with the DOR's position in *Union I,* Revenue Decision 81–30 and Revenue Decision 86–A–1. The superior court found:

> income under [AS] 43.20 is to be determined under the formulary apportionment method but that exempt income under [AS] 43.25 is to be determined under the separate accounting method and that this interpretation is supported by the language and policy of AS 43.30, AS 43.25 and the Certificate.

The state asserts that the calculations involve a "two-step" process, and therefore two approaches are reasonable. Finally, the state argues that (1) separate accounting should be used to determine exempt business income and credits because separate accounting is the only method capable of identifying industrial development income under AS 43.25.010(a), and (2) the Alaska Industrial Incentive Act allows an exempt business to be exempt from income tax on its income derived solely from industrial development.

 We affirm the DOR's interpretation. Union has failed to point out any term or provision in the Certificate indicat-

---

**5.** AS 43.25.040 provides in part:
 A grant of tax exemption under this chapter is considered a contract between the grantee and the state.

**6.** *See* 71 Am.Jur.2d *State and Local Taxation* § 331, at 642 (1973).

ing that formulary apportionment is appropriate for calculating exempt income. The presumption that the state's application of the Certificate is reasonable has not been overcome, much less has Union demonstrated that the "contract clearly and unequivocally extends the exemption beyond the state's interpretation." *Union I,* 677 P.2d at 1260. The state has set forth sound tax policy reasons for calculating exempt income and credits under separate accounting and actual tax liability under formulary accounting. Further, the state has demonstrated that its interpretation is grounded in a reasonable construction of the Alaska Industrial Incentive Act.[7] Construing the exemption strictly, and against a broad reading allowing exemption, we conclude that the DOR decision is reasonable. Union has failed to rebut the presumption of reasonableness. The revenue decision is hereby AFFIRMED.[8]

**7.** Union also contends that the state is judicially estopped from asserting its present position, as Union believes the state has taken a contrary position in prior litigation. The doctrine of judicial quasi-estoppel precludes a litigant from taking an inconsistent position from prior litigation where the circumstances of the new position would render the previous position unconscionable. *See Alaska Statebank v. Kirschbaum,* 662 P.2d 939, 942–43 & n. 13 (Alaska 1983). We reject Union's argument. The record demonstrates that the state has applied formulary apportionment to determine actual tax liability and used separate accounting to determine exempt business income. The state concedes it misspoke in *Union I* when it indicated hypothetically that formulary apportionment could be used to determine exempt business income. *See Union I,* 677 P.2d at 1262 n. 12. The state has in fact applied separate accounting to determine exempt business income. Accordingly, we find the doctrine of judicial quasi-estoppel inapplicable.

**8.** We note that the state must consistently apply the present methodology; exempt income must be calculated by separate accounting, and actual tax liability must be ascertained under formulary apportionment.