ANCHORAGE BAPTIST TEMPLE, Appellant,

v.

Keith COONROD; Ray Metcalfe; American Civil Liberties Union of Alaska; Clyde Baxley; Grace Brown; Bill Jager; Al Sundquist; James Woolever; Arlen Acharias; Dorothy Zappa; and State of Alaska, Appellees.

Valley Baptist Tabernacle and Hamilton Acres Baptist Church, Appellants,

v.

Clyde Baxley, Grace Brown; Bill Jager; Al Sundquist; James Woolever; Arlen Acharias; Dorothy Zappa; Keith Coonrod; Ray Metcalfe; American Civil Liberties Union Of Alaska; and State of Alaska, Appellees.

Nos. S–12421, S–12442.

Supreme Court of Alaska.

Aug. 31, 2007.

Dan K. Coffey, The Law Offices of Ernouf & Coffey, P.C., Anchorage, and Mathew D. Staver and Erik W. Stanley, Liberty Counsel, Lynchburg, Virginia, for Appellant Anchorage Baptist Temple.

Kevin G. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, for Appellants Valley Baptist Tabernacle and Hamilton Acres Baptist Church.

Jason Brandeis, ACLU of Alaska Foundation, Anchorage, for Appellees Keith Coonrod, Ray Metcalfe, and American Civil Liberties Union of Alaska.

Richard W. Postma, Jr., Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee State of Alaska.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

When citizens filed two lawsuits challenging the constitutionality of a statute, AS 29.45.030(b), that exempts teachers' residences owned by religious organizations from property taxes, three churches sought to intervene. The churches were initially permitted to intervene in one lawsuit, but were ultimately relegated to amicus curiae status after the two lawsuits were consolidated. They appeal, claiming that they have a direct and substantial interest in the litigation, and that their interest is not being adequately represented by the State of Alaska.

By order issued March 2, 2007 we ruled that it was error to deny the motions to intervene. This opinion explains our reasons for that ruling.

We do not question the state's ability to fairly and vigorously represent its citizens and the associations to which they belong, including religious associations such as these churches. But we reverse because these churches have significant financial and potentially unrepresented constitutional interests in the litigation, because there may be actual adversity as to one argument the churches seem to advance, and because the state, by suggesting it cannot represent the churches' interests, has created the appearance of adversity of interest. The churches are therefore entitled under Alaska Civil Rule 24(a) to intervene as of right.

### II. FACTS AND PROCEEDINGS

The Alaska Legislature recently amended AS 29.45.030(b) to create a mandatory property tax exemption for educators' residences owned by "private religious or parochial" schools.[1] The amendment became effective on August 23, 2006.[2]

Before the amended law took effect, two groups of citizen-taxpayers filed lawsuits

---

1. AS 29.45.030(b)(1), as amended by ch. 44, § 1, SLA 2006, states:

   (b) In (a) of this section, "property used exclusively for religious purposes" includes the following property owned by a religious organization:
   (1) the residence of *an educator in a private religious or parochial school or* a bishop, pastor, priest, rabbi, minister, or religious order of a recognized religious organization; *for purposes of this paragraph, "minister" means an individual who is*

   > *(A) ordained, commissioned, or licensed as a minister according to standards of the religious organization for its ministers; and*
   > *(B) employed by the religious organization to carry out a ministry of that religious organization....*

   (Emphasis added to amended text.)

2. Ch. 44, SLA 2006 (stating that sections 1 and 2 become effective on August 23, 2006).

against the State of Alaska to challenge the amended statute's validity. Keith Coonrod, Ray Metcalfe, and the American Civil Liberties Union of Alaska filed the first lawsuit on June 12, 2006.[3] We refer to them collectively as the Coonrod plaintiffs or Coonrod appellees. Clyde Baxley and other Anchorage residents filed the second lawsuit on June 14, 2006.[4] Although the merits of the two lawsuits are not at issue in this appeal, the plaintiffs in both lawsuits contended that the new tax exemption violates the establishment clauses of the Alaska and United States Constitutions.

Anchorage Baptist Temple, Valley Baptist Tabernacle, and Hamilton Acres Baptist Church sought to intervene in both lawsuits as parties aligned with the only named defendant, the State of Alaska.[5] Anchorage Baptist sought to intervene because it asserted it will have to pay at least $23,000 per year in property taxes if the law is struck down. Hamilton Acres and Valley Baptist alleged that they own property that they plan to use for teacher housing in the future. The Coonrod plaintiffs opposed intervention; the state and the Baxley plaintiffs did not. The three churches' motions to intervene were denied by Superior Court Judge Mark Rindner in the *Coonrod* case, but were granted by Superior Court Judge Patrick J. McKay in the *Baxley* case. Judge Rindner permitted the three churches to participate as amici curiae.

When the two cases were consolidated at the state's request, Judge McKay sua sponte vacated his earlier order, thus denying the churches' intervention motions, and allowed them to participate as amici curiae instead. The consolidated lawsuit was stayed pending this appeal.

On appeal, the churches asked us to reverse the superior court orders denying their intervention motions.[6] The Coonrod appellees asked us to affirm. The Baxley appellees did not file briefs, and have not opposed the churches' intervention motions. Appellee State of Alaska also asked us to reverse the orders denying intervention.

We heard oral argument on January 9, 2007 and on March 2 we issued an order holding that appellants were entitled to intervene per Alaska Civil Rule 24(a).[7] Our order reversed the orders denying intervention and remanded. We issued that order to minimize delay in the superior court proceedings. A copy is attached as Appendix A. This opinion explains our reasons for that ruling.

### III. STANDARD OF REVIEW

■ We review a denial of a timely Rule 24(a) motion to intervene as of right using our independent judgment.[8]

### IV. DISCUSSION

The churches claim that they are entitled to intervene as of right under Rule 24(a). Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.[9]

■ Because we favor broad access to the courts, we "will liberally construe Alaska

---

**3.** Superior Court Case No. 3AN–06–8866 CI.

**4.** Superior Court Case No. 3AN–06–8943 CI.

**5.** The Bible Baptist Church of Fairbanks, Inc., was initially a party to the lawsuit but subsequently withdrew.

**6.** Valley Baptist and Hamilton Acres appealed together.

**7.** Because we conclude that appellants are entitled to intervene as of right, it is unnecessary to

consider their alternative contention that it was an abuse of discretion to deny their Rule 24(b) motion for permissive intervention.

**8.** *Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 912–14, 916 (Alaska 2000) (holding that organization that sponsored English-only initiative was entitled under Rule 24(a) to intervene in lawsuit challenging initiative's constitutionality while organization that merely funded pro-initiative advertising was not).

**9.** Alaska R. Civ. P. 24(a).

Civil Rule 24(a)."[10] We apply a four-part test to determine whether a party is entitled to intervene under Rule 24(a):

(1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) the applicant must show that this interest may be impaired as a consequence of the action; and (4) the applicant must show that the interest is not adequately represented by an existing party. [11]

■ Turning to the first part of the test, no party asserts that the motions were untimely. We will not hold that a motion to intervene is untimely if no party raises timeliness as an issue.[12]

Under the second part of the test, the churches' interest in the lawsuit must be "direct, substantial, and significantly protectable." [13] The churches argue that their interest in the lawsuit is direct, substantial, and significantly protectable for four reasons. First, they argue that they have a financial interest in the outcome of the litigation. The state joins them in this argument. Second, Anchorage Baptist claims that the Coonrod plaintiffs conceded that it has an interest in the litigation by arguing that the law was passed to benefit Anchorage Baptist. Third, Valley Baptist and Hamilton Acres argue that the tax exemption is already vested in them by article IX, section 4 of the Alaska Constitution. Fourth, Valley Baptist and Hamilton Acres argue that the pre-amendment tax policy violated their right to equal protection of the law because non-religious private schools have been granted a tax exemption for teacher housing "for decades." [14]

■ The Coonrod appellees respond that neither the churches' financial interests nor their constitutional interests are sufficiently weighty to justify intervention. The Coonrod appellees also argue that Anchorage Baptist does not have a legally cognizable "individualized stake" in the matter even if it was the intended beneficiary of the legislation.

■ We agree with the Coonrod appellees that although Anchorage Baptist may have been the intended beneficiary of the legislation, it did not necessarily have a legally cognizable interest for purposes of intervention. Those affected, even negatively, by a lawsuit may be significantly more numerous than those who are entitled to intervene under the four-part test. We also agree that an indirect financial interest, standing alone, is insufficient to secure intervenor status. In *Laborers Local 942 v. Lampkin,* we ruled in favor of a union seeking to intervene in a lawsuit challenging a project labor agreement.[15] We held that the union was entitled to intervene because it helped negotiate the agreement, not because it was merely a ben-

**10.** *Kritz,* 3 P.3d at 912.

**11.** *Id.* at 911 (citing *State v. Weidner,* 684 P.2d 103, 113 (Alaska 1984)).

**12.** *Id.* at 912 (stating that independent judgment standard applies because timeliness not raised as issue).

We determine whether a motion to intervene is timely by applying a four-part test. We consider the length of the delay before the movant filed, the prejudice to existing parties if the motion is granted, the prejudice to the proposed intervenors if the motion is denied, and any "idiocratic circumstances" that militate for or against intervention. *Scammon Bay Ass'n, Inc. v. Ulak,* 126 P.3d 138, 143 (Alaska 2005).

Although we are not deciding the timeliness issue here, the churches filed their motions to intervene both before the state's answer was due and before the state actually answered. The *Coonrod* lawsuit was filed on June 12, 2006. Because Alaska Civil Rule 12(a) gave the state forty days to answer, and because the fortieth day was July 22, 2006, a Saturday, the state's answer was due Monday, July 24. The churches filed their motions on or before that date and before the state answered. The United States Court of Appeals for the Ninth Circuit has held that an intervention motion filed on or before the date the answer was filed and before the trial court made any substantive rulings was timely. *NW. Forest Res. Council v. Glickman,* 82 F.3d 825, 837 (9th Cir.1996).

**13.** *Weidner,* 684 P.2d at 113.

**14.** Although the second part of the test requires us to consider the proposed intervenors' asserted interests, when discussing their arguments we do not mean to imply that any particular contention is or may be meritorious. We consider here only the issue of intervention as of right.

**15.** *Laborers Local No. 942 v. Lampkin,* 956 P.2d 422, 427, 438–39 (Alaska 1998).

eficiary of the agreement.[16] Here, all three churches have asserted a much more direct financial interest—eligibility for a valuable property tax exemption if the statute is valid—than the union had in *Lampkin.* Moreover, as discussed below, the churches' interest is not merely financial.

We reversed orders denying intervention under Rule 24(a) in two prior cases in which the proposed intervenors raised constitutional issues in conjunction with other legal interests. In *McCormick v. Smith*, the superior court enjoined a recall election and voters who wished to recall a school board member sought to intervene to challenge the injunction that the city chose not to appeal.[17] We held that the voters had a sufficient interest in the matter to intervene because the right to recall is established in the Alaska Constitution.[18] We also noted that the interest of these particular voters was "heightened" because they had initiated the recall.[19] In *Alaskans for a Common Language, Inc. v. Kritz*, the sponsors of an initiative that the governor had publicly criticized sought to intervene in an action challenging the initiative's constitutionality.[20] We concluded that the sponsors had sufficient legal interest to intervene because the initiative process is constitutionally based, because they had drafted the legislation, and because they had an obligation to represent the other sponsors "in all matters concerning the initiative."[21]

The churches meet the heightened standard discussed in *Kritz* and *McCormick.* They have alleged that the pre-amendment practice of granting tax exemptions for teacher residences owned by non-religious private schools would violate equal protection because there was no similar exemption for religious schools. Even if the legislature had not amended the tax exemption statute, the churches would be entitled to advance this equal protection challenge.[22] When their financial interest is considered in conjunction with constitutional arguments the state is unlikely to raise, the churches' interests are "direct, substantial, and significantly protectable."[23]

■ Regarding the third part of the test, the churches' interest in the tax exemption may be impaired as a result of these lawsuits. If the law is struck down as unconstitutional, the churches will be unable to assert their alleged constitutional or actual financial interests in the tax exemption.[24]

■ Turning to the fourth part of the test, the churches argue that the state will not adequately represent their interests. We presume that the state will adequately represent the interests of all of its citizens in trying to uphold a statute against a constitutional challenge, because the state is "charged by law with representing the interests of the people."[25] A proposed intervenor may rebut this presumption by making "a showing of collusion, adversity of interest, possible nonfeasance, or incompetence."[26] We allowed intervention in *Kritz* due to a "possible appearance of adversity of interest,"[27] but only in a rare case will the mere appearance of an adverse interest justify intervention.

The churches argue that there is actual adversity between the state's interests and theirs. They assert that the state is making different tactical decisions than the churches would, that the state has competing obligations both to defend the statute and to

---

**16.** *Id.* at 438.

**17.** *McCormick v. Smith*, 793 P.2d 1042, 1043 (Alaska 1990).

**18.** *Id.* at 1044 (citing Alaska Const. art. XI, § 8).

**19.** *Id.*

**20.** *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 910 (Alaska 2000).

**21.** *Id.* at 912–14.

**22.** *Stanek v. Kenai Peninsula Borough*, 81 P.3d 268, 270–72 (Alaska 2003) (discussing taxpayer's equal protection challenge to tax exemptions).

**23.** *Weidner*, 684 P.2d at 113.

**24.** *Kritz*, 3 P.3d at 913.

**25.** *Id.*

**26.** *Id.*

**27.** *Id.* at 914.

equalize the tax burden, and that a state official testified against the exemption.

■ Whether the state generally has an obligation to equalize the tax burden is irrelevant here.[28] The record below contains no indication that the state, in order to equalize the tax burden, or for any other reason, will fail to defend its own duly enacted law. Regarding the state's tactical decisions, as the Coonrod appellees point out, "[d]ifferences in trial strategy do not establish a right to intervention."[29] Finally, Valley Baptist and Hamilton Acres argue that a state assessor testified against the exemption; they compare this case to *Kritz*, where a member of the Attorney General's Office questioned the constitutionality of the English-only initiative before it was placed on the ballot. This comparison is unconvincing for two reasons. First, although the Attorney General's Office was responsible for enforcing the challenged initiative and defending it in court, a state tax assessor is not responsible for enforcing a tax exemption or defending it in court. Second, the assessor described the law as "unfunded." This may arguably be either a criticism or an accurate and neutral characterization of the law's fiscal underpinnings, but it is a far cry from criticizing it as unconstitutional.

Hamilton Acres and Valley Baptist argue that the practice of granting tax exemptions to private non-religious educational organizations while denying them to churches violates equal protection. Although they advance this argument to show that they have a substantial interest, this incipient equal protection argument is also relevant to determining whether the interests of the state and the churches are adverse because the intervenors wish to raise an argument no existing party is likely to make. We think it is unlikely that the state, in arguing that the present statute is constitutional, would contend that the amendment was necessary to cure any pre-amendment unconstitutionality, and there is no sign in the record that the state has raised any such contention to date. Because the churches make an equal protection argument that the state is unlikely to raise, we conclude that the churches' and state's interests are adverse.

■ The state echoes the churches' broad intervention arguments, and also asserts that there is an apparent conflict, both because it has a duty to equalize the tax burden and because the state assessor "publicly opposed" the amendment. We remain unconvinced by the equalization and state assessor arguments, but we nonetheless conclude that there exists an apparent conflict.

The state contends that because the churches were not permitted to intervene, the state is now "entangled" with them, creating a "possible appearance of adversity of interest." The state seems to argue that because it is defending a law that benefits religious organizations, it might appear to be using its "prestige, coercive authority, or resources" in a manner that violates its duty "to remain neutral in religious disputes." If pursuing a lawsuit were to excessively "entangle" the state with religious organizations, a violation of the state and federal establishment clauses would result.[30] There is no such danger here. The state is charged with the duty of neutrally representing the interests of all of its citizens and the associations they belong to, including churches, by de-

---

28. Moreover, *Union Oil Co. of Calif. v. State*, 804 P.2d 62, 65 (Alaska 1990), seems to establish a preference for the state's interpretation of an exemption statute, and only mentions the duty to equalize the tax burden in passing. Here, there is no question of a broader or narrower interpretation—the only question is whether the statute is constitutional on its face.

29. *See* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1909 (2d ed. 1986) ("A mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit.").

30. *Cf. Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (holding statute must have neutral purpose, must not have principal or primary effect of advancing or inhibiting religion, and must not foster "excessive government entanglement with religion"); *Bonjour v. Bonjour*, 592 P.2d 1233, 1242 (Alaska 1979) (holding that statute permitting court to consider child's religious needs when awarding custody is constitutional because it satisfies *Lemon* test).

fending duly enacted laws. The United States Supreme Court has held that "the guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." [31] In its capacity as a party, the state is not here extending a benefit, but is instead executing its duty by "represent[ing] the state in all civil actions in which the state is a party." [32] It is appropriately trying to uphold a duly enacted statute against constitutional attack. Because the state is not violating the principle of neutrality, it is not violating the establishment clause. Our conclusion is supported by a persuasive United States Court of Appeals for the Fifth Circuit decision holding that a state could "assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors," in constitutionally defending a law that allowed for school prayer.[33]

Although we are unpersuaded by the state's establishment clause argument, we nonetheless perceive an appearance of adversity. The state has actually asserted that the establishment clause impairs its ability to adequately represent the interests of the churches in this establishment clause case. That contention carries with it an appearance of adversity of interest that might reasonably lead members of the public to doubt that the state will be able to defend the statute vigorously and effectively. That contention therefore confirms the need to order intervention, so that the churches can directly assert their arguments in the superior court.

## IV. CONCLUSION

Because the churches have an interest that is direct and substantial, because they may wish to raise an argument no other party is likely to raise, and because the state's interests are both actually and apparently adverse to the churches' interests, we have REVERSED the superior court orders denying the three churches' motions for intervention as of right under Alaska Civil Rule 24(a), and have REMANDED. To prevent duplicative litigation, the superior court may require the churches to align themselves with each other and submit consolidated briefs to the extent possible.

MATTHEWS, Justice, not participating.

### APPENDIX A

Anchorage Baptist Temple, et al.,

Appellants,

v.

Keith Coonrod, et al.,

Appellees.

———————

Valley Baptist Tabernacle, et al.,

Appellants,

v.

Clyde Baxley, et al.,

Appellees.

Supreme Court No. S-12421

Trial Court Case # 3AN-06-08866CI

Supreme Court No. S-12442

Trial Court Case # 3AN-06-08943CI

#### Order

Date of Order: 3/2/07

Before: Fabe, Chief Justice, Eastaugh, Bryner, and Carpeneti, Justices. [Justice Matthews, not participating.]

Upon consideration of the parties' arguments in their briefs and at oral argument, and because the court considers it desirable that the parties and the superior court be

---

**31.** *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 839, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (citations omitted) (holding state university could not deny funding to religious publication when university funded nonreligious publications).

**32.** AS 44.23.020(b)(3).

**33.** *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir.1996) (holding legal organization representing students not entitled to intervene in action challenging constitutionality of school prayer statute because attorney general could adequately defend statute).

promptly informed of the result so that the two consolidated cases can proceed in the superior court,

**IT IS ORDERED:**

1. The orders denying the churches' motions to intervene as of right under Alaska Civil Rule 24(a) are REVERSED.

2. This court will issue a written opinion at a future date explaining the reasons for this result.

3. The superior court proceedings may go forward upon entry of this order, and need not await publication of this court's opinion.