**F. Jackson McCORMICK, Jack N. Jordan and Beverly Fletcher, Appellants,**

v.

**H. Sally SMITH, Appellee.**

**No. S–3666.**

Supreme Court of Alaska.

June 1, 1990.

Frederick Torrisi, Torrisi & Snyder, Dillingham, for appellants.

Vivian Senungetuk, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about March 8, 1989, several persons submitted an application to the Dillingham City Clerk, Vivian Braswell, for a petition to recall Sally Smith, Shirley Wiggins and Joyce Armstrong from their positions as school board members with the Dillingham City School District. Braswell approved the application, and prepared a recall petition. Enough signatures were then collected, and a recall election was scheduled for May 9, 1989.

Smith, Wiggins and Armstrong filed a complaint against Braswell and the city seeking a court order enjoining the election. On April 21, 1989, the court granted the injunction, reasoning that the grounds for recall in the petition were not stated with particularity as required by AS 29.26.-260(a)(3).[1]

The petition sponsors then submitted a second application for a recall petition, this one stating grounds much more specific than the first application. Smith was the only board member named in the second application. On April 28, 1989, Braswell approved the second application and issued a new recall petition. The new petition was circulated and, on June 15, 1989, was certified by Braswell as having sufficient signatures. A new recall election was scheduled for August 6, 1989.

On July 6, 1989, Smith filed an amended complaint against Braswell and the city,

and also moved for a court order enjoining the second recall election. On July 13 the court granted the motion, holding that AS 29.26.300 barred another recall attempt made within six months of April 21, the date of the first injunction. The court also found that eight signatures on the second recall petition failed to meet the standards of AS 29.26.260 and 270.

The petition sponsors then went out and collected eight new signatures which were certified by Braswell on July 21. Meanwhile, Braswell and the city filed a petition for review in this court. The August election was not held, and this court denied the petition for review.

On September 7, 1989, the Dillingham City Council voted 5–0 against appealing the trial court's order enjoining it from pursuing the second recall petition. On September 12, Jackson McCormick (school board member), Jack Jordan (petition sponsor) and Beverly Fletcher (petition signer) moved to intervene as of right[2] as party defendants. The court denied the motion and entered judgment in favor of Smith. McCormick, Jordan and Fletcher (hereafter appellants) appeal. They contest the trial court's denial of their motion to intervene, and the court's injunction against the second recall election.

## II. DISCUSSION

### A. *Intervention*

■ The trial court's denial of appellants' motion for intervention was based on our decision in *State v. Weidner*, 684 P.2d 103 (Alaska 1984). Under *Weidner*,

[a] four-part test is imposed to determine if the court is required to grant intervention as a matter of right: (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired as a consequence of the action; and (4) it must be

---

1. The relevant statutes from AS 29.26 are discussed in part II B (1).

2. Pursuant to Civil Rule 24, an outsider with an interest in a lawsuit may intervene as a party

even though he or she is not named as a party to the suit. Rule 24 distinguishes between two types of intervention: (1) "Intervention of Right," subsection (a), and (2) "Permissive Intervention," subsection (b).

shown that the interest is not adequately represented by an existing party.

*Id.* at 113 (citation omitted). *See also Alaska Christian Bible Inst. v. State,* 772 P.2d 1079, 1081 (Alaska 1989); Alaska Civ.R. 24(a). According to the trial court, appellants failed to meet the third and fourth prongs of the test. We believe that they met all four prongs of the test and therefore reverse.[3]

First, appellants' motion to intervene was timely. Their motion was filed only five days after the city decided not to appeal and before judgment was entered. Moreover, during oral argument before the trial court, appellants specifically stated that they did not intend to inject any new issues into the case, and wanted to intervene only to take an appeal. Because there was no potential for delayed presentation of new evidence or arguments, we perceive no prejudice to Smith based on the timing of appellants' application for intervention.[4] *See Brown v. Cook Inlet Region, Inc.,* 569 P.2d 1321, 1323 and n. 7 (Alaska 1977) (corporate board members' application for intervention timely when made within twelve days of learning that the corporation/plaintiff would not prosecute an appeal and before judgment was entered, and

there was no showing that delay would prejudice the defendant).

Second, appellants have a sufficient interest in the subject matter of the action. In *Weidner,* we stated that intervention of right requires a "direct, substantial and significantly protectable" interest. 684 P.2d at 113. As voters, appellants' interest in pursuing the recall of Smith is of constitutional dimension.[5] Moreover, as initiators of the recall of Smith,[6] they have a heightened interest in a lawsuit which would determine the fate of the recall attempt.

Third, appellants' interest may be impaired as a result of this lawsuit. The city lost below. Unless this loss is reversed on appeal, appellants cannot follow-up on the second petition to recall Smith.

With respect to the fourth prong of the test, a more difficult question is presented; that is, whether the city's decision not to appeal rendered its representation of the appellants' interest inadequate. Because governmental entities are charged by law with representing the interests of the people, the federal courts[7] have recognized a presumption of adequate representation when a governmental entity is a party to a lawsuit. *See Morgan v. McDonough,* 726

---

**3.** Where, as in the present case, the facts relevant to an application for intervention of right are not in dispute, we independently review a denial of the application. *See* 7C C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1902 at 231 (1986) ("application for intervention of right seems to pose only a question of law"). *Cf. Brown v. Cook Inlet Region, Inc.,* 569 P.2d 1321, 1322 (Alaska 1977) ("Intervention is not discretionary with the trial court where the requirements for intervention of right are met."). Permissive intervention, on the other hand, is committed to the discretion of the trial court, and the court's decision will be reversed on appeal only for an abuse of that discretion. *State v. Enserch Alaska Const., Inc.,* 787 P.2d 624, 629 (Alaska 1989); *Weidner,* 684 P.2d at 113–14. *See also Federal Practice and Procedure* § 1902 at 231.

**4.** Smith has virtually admitted this. In opposing appellants' motion to intervene, Smith told the trial court:

If the intervenors wish only to step in and bring an appeal on record as it stands ... then the intervenors probably meet the criteria set out in *State v. Weidner.* ...

If, however, intervenors wish to step in and relitigate the issues at the superior court level, to develop a new record, then their motion is not timely. In addition it prejudices [Smith].

**5.** Article XI, section 8 of the Alaska Constitution gives voters the right to recall elected officials, subject to procedures and grounds prescribed by the legislature. Legislative procedures are to be liberally construed so that the people may vote and express their will. *Meiners v. Bering Strait School District,* 687 P.2d 287, 296 (Alaska 1984).

**6.** McCormick, a member of the school board, was involved in the controversy which allegedly lead to the recall attempt. He signed the second recall petition, as did Fletcher. Jordan was a sponsor of the petition, and also signed it.

**7.** Federal intervention as of right is governed by Federal Rule of Civil Procedure 24, and requires application of the same test employed under Alaska Civil Rule 24. *See Morgan v. McDonough,* 726 F.2d 11, 13 (1st Cir.1984).

F.2d 11, 14 (1st Cir.1984). *See also* 7C C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure:* Civil 2d § 1909 (1986). However, for purposes of federal intervention, inadequate representation may nevertheless be established by a showing of collusion, adversity of interest or the government's "fail[ure] to fulfill its duty of representation." *Morgan,* 726 F.2d at 14. Similarly, for purposes of Alaska practice, " '[i]nadequacy' is proven by a showing of collusion, adversity of interest, *possible nonfeasance,* or incompetence." *Weidner,* 684 P.2d at 113 (emphasis added).

Here, the city was charged with representing the interests of its voters, including appellants. The lawsuit involved novel legal issues. If the city accepted defeat in the trial court, the people's opportunity to vote on the recall of Smith would be frustrated for a second time. Further delays surrounding a third recall petition, if there were to be a third recall attempt, could result in a total loss of an opportunity to vote.[8] Nevertheless, the city relinquished its responsibility for defending this fundamental right. According to an affidavit in support of the motion to intervene, the city's reasons for failure to prosecute on appeal "were not entirely clear but included the cost of litigation and the sentiment that the Alaska Municipal League or some other organization should share in the burden of resolving the problems which appear to exist in AS 29.26."[9]

We believe that this relinquishment of responsibility constituted a "fail[ure] to fulfill its duty of representation," or "possible nonfeasance," for purposes of determining whether appellants were entitled to intervene. *See Smuck v. Hobson,* 408 F.2d 175, 181 (D.C.Cir.1969) (en banc) (school board failed in its duty to represent parents and children in the district by not appealing a desegregation order); *but see Spangler v.*

*Pasadena City Board of Education,* 427 F.2d 1352 (9th Cir.1970). We note that concerns about the cost of continued litigation do not seem to be of as much weight to appellants. Unlike the city, appellants do not have to deal with a wide range of fiscal responsibilities to the people of Dillingham. *See Smuck,* 408 F.2d at 181. Also, as noted, appellants' efforts to initiate Smith's recall demonstrates their heightened interest in the lawsuit. Consequently, the city's decision against taking an appeal, although perhaps "adequate" for purposes of representing the general public interest, inadequately represented the particular interests of appellants. *See id.* We therefore hold that appellants were entitled to intervene as of right.

## B. *Recall*

### 1. *Statutory Background*

Recall of elected or appointed municipal officials is governed by article 3 of AS 29.26.[10] Portions of AS 29.26 relevant to the present case are as follows.

To begin the recall process, AS 29.26.260 requires that an application for a recall petition be filed with the municipal clerk. The application must include, among other things, "a statement . . . of the grounds for recall stated with particularity." AS 29.-26.260(a)(3).

If the clerk determines that the application meets the requirements of AS 29.26.-260, he or she then issues a recall petition. AS· 29.26.270. Under AS 29.26.270, the clerk must prepare the recall petition, and all copies must include such things as the name of the official sought to be recalled, spaces for signatures, and so forth. Most important to this appeal is the requirement that the petition contain "the statement of

---

**8.** During her last several months in office, Smith cannot be recalled. *See* AS 29.26.290 (petition for recall may not be filed within 180 days before end of term).

**9.** The city filed a nonopposition statement in response to the motion to intervene, and offered no other explanation for its decision against taking an appeal.

**10.** AS 29.26 has been amended since the orders of the trial court were rendered. *See* ch. 80, §§ 14–19, SLA 1989. However, the amendments do not affect the issues presented by this appeal.

the grounds for recall as set out in the application for petition." AS 29.26.-270(a)(2).[11]

After the petition is circulated by its sponsors, the clerk determines whether signatures obtained meet the requirements of AS 29.26.280. AS 29.26.280 requires, for example, that a specified number of legible signatures be obtained and authenticated by petition sponsors within 60 days after the petition is issued. *See* AS 29.26.280(a)-(c).

Under AS 29.26.290, the clerk must certify on the petition whether it is sufficient or insufficient. Sufficient petitions are submitted to the municipal governing body which schedules a recall election. AS 29.-26.310–320. Insufficient petitions are rejected and filed as public records, unless a sufficient number of signatures are obtained before the eleventh day after rejection by replacing invalid signatures with valid ones.[12] AS 29.26.290(b)-(c). "A new application for a petition to recall the same official may not be filed sooner than six months after a petition is rejected as insufficient." AS 29.26.300.

### 2. *AS 29.26.300*

On April 21, 1989 the trial court enjoined further processing of the first petition for recall, holding that the petition did not state the grounds for recall with particularity in violation of AS 29.26.-260(a)(3). One week later, a new recall petition was issued by Braswell. The trial court enjoined further processing of the new petition, holding, in part, that AS 29.-26.300 barred the subsequent application for a petition because it was made sooner than six months after the April 21 ruling.

The six-month-wait period of AS 29.26.-300 is not triggered unless "a *petition* is rejected as insufficient." (Emphasis added.) Here, appellants maintain that the six-month period was not triggered because

the trial court's ruling as to the first recall attempt should be deemed a ruling that the *application* for petition was insufficient, not a ruling that the *petition* was insufficient. Their argument is based on a literal interpretation of AS 29.26.260(a)(3), which requires that the "application" state grounds for recall with particularity, and AS 29.26.300, which provides for a wait period if a "petition" is rejected as insufficient. Appellants argue that the trial court's ruling that the first recall attempt violated the application requirements of AS 29.26.260(a)(3) should not be construed as rejecting the petition as insufficient for purposes of AS 29.26.300. According to appellants, "a petition is rejected as insufficient" under AS 29.26.300 only if a requirement related to the petition itself has been violated. That is, only if the petition does not meet the requirements of AS 29.26.-270–290.

Relying on the reasoning of the trial court, Smith maintains that the term "insufficient" in AS 29.26.300 refers to all of the ways in which a petition may be inadequate to go to a vote, including an absence of a sufficiently particular statement of the grounds for recall. She argues that this is the definition of insufficiency for purposes of recalling state officials, *see* AS 15.45.-710, and should also apply in the context of AS 29.26.300.

While recognizing that the question is a close one, we agree with the arguments advanced by appellants. We believe that their suggested interpretation of AS 29.26.-300 comports with the language and purpose of the statute, and, in accordance with our decision in *Meiners v. Bering Strait School Dist.*, 687 P.2d 287, 296 (Alaska 1984), avoids judicial creation of an artificial hurdle to the people's right to vote and express their will.

To be sure, a petition lacking particularized grounds for recall is "insufficient" to

---

**11.** Under AS 29.26.330, the grounds for recall are carried forward to the recall ballot "as stated ... on the recall petition."

**12.** Original and supplementary petitions must be filed more than 180 days before the expiration of the official's term in office. AS 29.26.-290(a) and (b)(2).

go to a vote. *See Meiners,* 687 P.2d at 298.[13] But, because the statement of grounds in the petition is copied verbatim from the application for petition, a rejection of the petition for this reason is really a determination that the clerk erred in first approving the application, not a determination that any error was committed in the subsequent preparation of the petition.[14] Smith's reference to AS 15.45.710 in fact supports our recognition of this distinction between insufficiencies related to a petition and those related to an application. AS 15.45.710 (83 SLA 1960) provides that, with respect to the recall of state officials, "[a] recall submitted to the voters may not be held void because of the insufficiency of the grounds, application, *or* petition by which the submission was procured." (Emphasis added.) This statute distinguishes between three types of insufficiencies related to recall: insufficiencies of the (1) grounds, (2) application, *or* (3) petition. Notably, in enacting AS 29.26.300, the legislature only identified one type of insufficiency which would trigger the six-month period—an insufficiency of the "petition."

Moreover, the purpose underlying AS 29.26.300 suggests limiting application of its six-month period to situations where a requirement of AS 29.26.270–90 unique to petitions is violated: where there are an insufficient number of signatures, where signatures are not properly authenticated by sponsors, and so forth. The evil which the six-month period seems to be aimed at is rapid-fire harassment by a small group of dissidents who would otherwise repeatedly attempt to throw an official out of office despite a lack of support for recall throughout the community.[15] No such evil exists where, as in the present case, it is

the municipal clerk who errs in accepting an application for a recall petition.

Conversely, we do not think it was the legislature's intent that petition circulators who do in fact garner sufficient support for a first recall petition should have to wait six months to re-obtain that support for a second petition, simply because the municipal clerk erroneously accepted an application for the first petition. Such a construction of AS 29.26.300 would place undue significance in the discretionary decisions of municipal clerks. As we pointed out in *Meiners:*

> [W]hen the election involves city or borough officers, the certifying officer is the municipal clerk. In a small municipality, this is likely to be a part-time employee with little or no legal training. Such a municipality employs no full-time attorney, and the nearest private attorney it can retain to advise it may be hundreds of miles away.... The municipal clerk may well have been appointed by the very officials sought to be recalled.... Thus we think caution is indicated before adopting interpretations of the statutes which would require municipal clerks to make significant discretionary decisions of a legal nature.

687 P.2d at 296.

In sum, we decline to define the scope of AS 29.26.300 beyond its precise language. We do so to avoid creating an unnecessary obstacle to the people's right to vote and express their will. *See id.* We therefore hold that the six-month period of AS 29.26.-300 is not triggered when a petition for recall is rejected because a municipal clerk erroneously accepted an application which did not, pursuant to AS 29.26.260(a)(3), suf-

---

**13.** *Meiners* involved application of AS 29.28, which has since been repealed and recodified at AS 29.26. *See* ch. 74, § 88, SLA 1985.

**14.** AS 29.26.270(a)(2) only requires that the petition contain a statement of grounds "as set out in the application for petition."

**15.** A similar purpose is discernible from AS 29.26.340(b), which addresses the effect of a majority vote against recall: "If an official is

not recalled at the election, an application for a petition to recall the same official may not be filed sooner than six months after the election." Thus, if the dissidents' application is accepted, but they cannot obtain properly documented support for their petition, then AS 29.26.300 bars another attempt for six months. If they obtain the requisite support for their petition, but the official wins at the polls, they are similarly barred by AS 29.26.340(b) for six months.

ficiently particularize the grounds for recall.

### 3. *Validity of Signatures*

 In addition to finding a violation of AS 29.26.300, the trial court also ruled that eight of the 132 signatures (130 were required) on the second recall petition were invalid. Within eight days of the court's ruling, the petition circulators collected eight new signatures which were certified by Braswell. Smith has conceded to the facial validity of these signatures, but argues that they are nevertheless invalid because they were collected in contravention of the trial court's injunction against scheduling or holding the second recall election.

The trial court issued an injunction and, later, a temporary restraining order with respect to the second recall petition. Neither order purports to prohibit the replacement of invalid signatures with valid ones.[16] Nor could either order prohibit such activity in light of AS 29.26.290(b), which gives petition sponsors 10 days to cure signature deficiencies. *See Meiners*, 687 P.2d at 298 n. 12 (when a petition is rejected by a judicial decision to enjoin the proposed recall election, petition sponsors may obtain more signatures to reach the prescribed total, with the grace period beginning to run as of the date of the judicial decision).

REVERSED AND REMANDED.

---

**16.** The injunction only prohibits "scheduling or holding a recall election." The temporary restraining order only prohibits "scheduling a recall election, preparing ballots, or requiring [Smith] to make an election concerning preparation of a rebuttal statement, or making any further demands on [Smith] concerning the enjoined recall election."