ALASKANS FOR A COMMON LANGUAGE, INC., and U.S. English, Inc., Appellants,

v.

Moses KRITZ, individually and as Mayor, City of Togiak; Stanley Active, Sr., individually and as City Councilman, City of Togiak; Marie Paul, City Administrator, City of Togiak; Willie T. Echuck, Jr., Special Assistant, City of Togiak; Frank Logusak; Henry Alakayak; Anecia Lomak; Nancy Sharp; Veronica Michael; Walter Tirchick; Benjamin Nageak; Molly Pederson; Fanny Akpik; Jana Harcharek; Michael Aamodt; Jim Vorderstrasse; Sonia Collins; Manuel Macedo; Julia Samaniego; James Gilman; Elizabeth Beaver, through her father and next friend, Leo Beaver; Leo Beaver, individually and as father and next friend of Elizabeth Beaver; Ruthie Beaver; Minnie Mark; Sophie Evan; Grace L. Hill; Annie Cleveland; Elizabeth Pleasant; Susie Foster; Wassilie Bavilla; Paul Beebe; John O. Mark; and Ernestina Liranzo, Appellees.

No. S–9167.

Supreme Court of Alaska.

June 16, 2000.

Douglas J. Serdahely and Kevin D. Callahan, Patton Boggs L.L.P., Anchorage, and Kenneth P. Jacobus, Law Offices of Kenneth P. Jacobus, Anchorage, for Appellants.

Douglas Pope and Thomas A. Ballantine, Pope & Katcher, Anchorage, for Appellees Moses Kritz, Stanley Active, Sr., Marie Paul, Willie T. Echuck, Jr., and Frank Logusak.

Heather R. Kendall Miller and Eric D. Johnson, Native American Rights Fund, Anchorage, William Caldwell, Alaska Civil Liberties Union, Fairbanks, Les Gara, Friedman, Rubin & White, Anchorage, Todd Sherwood, North Slope Borough, Barrow, and Lloyd B. Miller, Sonosky, Chambers, Sachse & Miller, Anchorage, for Appellees Henry Alakayak, Anecia Lomack, Nancy Sharp, Veronica Michael, Walter Tirchick, Benjamin Nageak, Molly Pederson, Fanny Akpik, Jana Harcharek, Michael Aamodt, Jim Vorderstrasse, Sonia Collins, Manual Macedo, Julia Samaniego, James Gilman, Elizabeth Beaver, Leo Beaver, Ruthie Beaver, Minnie Mark, Sophie Evan, Grace L. Hill, Annie Cleveland, Elizabeth Pleasant, Susie Foster, Wassilie Bavilla, Paul Beebe, John O. Mark, and Ernestina Liranzo.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*O P I N I O N*

EASTAUGH, Justice.

## I. INTRODUCTION

Two incorporated organizations, Alaskans for a Common Language and U.S. English, appeal the superior court's order denying their motions to intervene in a lawsuit that will determine the constitutionality of a successful ballot initiative requiring the government to use English. Because the incorporators of Alaskans for a Common Language were also the sponsors on the initiative committee, and because the executive branch publicly opposed the initiative before the election, Alaskans for a Common Language was entitled to intervene under Alaska Civil Rule 24(a). We therefore reverse as to that organization and remand. U.S. English fails to show sufficient interest in the action because it does not have the same connections with the initiative's sponsors. We therefore affirm as to that organization.

## II. FACTS AND PROCEEDINGS

Three Alaskan voters, Susan Fischetti, Ken Jacobus, and State Representative Pete Kott,[1] acting as sponsors and members of an initiative committee, applied to have an initiative certified for the ballot in August 1997.[2] The initiative proposed that English be used by all public agencies in all government functions and actions, and in the preparation of all official public documents and records.

In September 1997, at the request of the lieutenant governor, the State of Alaska Attorney General's Office reviewed the initiative application and wrote a memorandum to the lieutenant governor. The reviewing assistant attorney general stated that she was aware of a constitutional challenge to a simi-

lar initiative in Arizona. She noted that the United States Supreme Court or the Alaska Supreme Court could find that the proposed Alaska initiative was unconstitutional, but she concluded that the outcome was not so certain that certification should be denied.[3] The assistant attorney general therefore recommended that the lieutenant governor certify the initiative application. The lieutenant governor certified the initiative application for the circulation of petitions.

Led by Jacobus, the sponsors circulated petitions and gathered the requisite number of signatures. On February 9, 1998, after verifying the signatures, the lieutenant governor certified the initiative petition and directed that a ballot title and proposition be placed on the ballot of the next statewide election. She then began to prepare the ballot title and proposition.

That same day, February 9, 1998, Jacobus, Fischetti, and one other Alaskan, Edgar Paul Boyko, filed to incorporate a nonprofit corporation, Alaskans for a Common Language, Inc. The stated purposes of the organization included promoting the use of English and engaging in campaign activities relating to the adoption of English as the official language. Jacobus acted as an incorporator, registered agent, director, and attorney. Fischetti acted as an incorporator, director, and press contact.

In July 1998 the lieutenant governor prepared the ballot title and proposition according to AS 15.45.180 and sent it to Jacobus for review. Jacobus objected to the proposed ballot language because it did not refer to the Native American Languages Act (NALA).[4] The lieutenant governor rejected Jacobus's proposed language and notified him that un-

---

1. Representative Kott is not a party to this litigation and has not asserted any interest in it.

2. An application for an initiative must be signed by 100 Alaskan voters as "sponsors." *See* Alaska Const. art. XI, § 2; AS 15.45.030. The application must also include three sponsors designated as an "initiative committee" who represent the sponsors and subscribers in all matters relating to the initiative. *See* AS 15.45.030. After the lieutenant governor certifies the application, the sponsors circulate petitions for signatures. *See* AS 15.45.110. If they collect enough signatures

the proposition is placed on the ballot. *See* AS 15.45.140–.150.

3. The assistant attorney general determined that the initiative was not plainly inconsistent with a provision of the Alaska constitution. *See Whitson v. Anchorage,* 608 P.2d 759, 762 (Alaska 1980) (permitting judicial review of proposed initiative to ensure citizens' efforts are not made in vain).

4. 25 U.S.C. §§ 2901–2906 (1994 & Supp. II 1996).

der AS 15.45.240 any person aggrieved by the determination could bring a superior court action for review of the ballot language within thirty days.

Alaskans for a Common Language sued the lieutenant governor to compel her to include a reference to NALA in the ballot language. Specifically, it proposed that the ballot language state that government entities "may use non-English languages ... [to] comply with federal law, including the Native American Languages Act." The Attorney General's Office represented the lieutenant governor and argued that a reference to NALA would reduce the readability of the summary and make the summary too long, when it was not clear that NALA protected the use of Native Alaskan languages from the initiative's requirements that government entities use English. The lieutenant governor prevailed and the ballot proposition was printed without referring to NALA.

Alaskans for a Common Language financed the campaign supporting passage of the initiative. It received the majority of its funding from U.S. English, Inc., a national, nonprofit corporation based in Washington, D.C. U.S. English is dedicated to promoting English as a common language of the United States.

During the campaign before the 1998 general election that included the initiative, Alaska Governor Tony Knowles publicly opposed the initiative, commenting that it was "unnecessary, unfair and unfortunate."

Alaskan voters passed the initiative. It was to become effective March 4, 1999.[5] Before the effective date, two groups of plaintiffs challenged the initiative's constitutionality in separate court actions.[6] The Attorney General's Office defended the initiative's constitutionality in both cases. After the superior court consolidated the two cases, Alaskans for a Common Language and U.S. English moved to intervene under Alaska Civil Rules 24(a) and (b). The two groups of plaintiffs opposed the motion to intervene but the state did not. The superior court denied the organizations' motion to intervene as of right under Civil Rule 24(a), holding that their interests were adequately represented by the state, and denied their motion for permissive intervention under Civil Rule 24(b), holding that they could more effectively and expeditiously participate as amici curiae.

Alaskans for a Common Language and U.S. English appeal.

## III. *DISCUSSION*

### A. *The Denial of Intervention Was a Final Appealable Order.*

■ The denial of an intervention motion is a final appealable order for the purposes of appellate jurisdiction.[7] But the Kritz appellees argue that the superior court's order was not final under Alaska Appellate Rule 202(a) because the superior court reserved the power to modify its decision in further proceedings.[8]

---

**5.** The initiative appeared on the ballot as Ballot Measure 6, "Adopting English as the official language of Alaska." Before its effective date the measure was codified as AS 44.12.300–.390. Although it has been codified, its operation was enjoined before it would have become effective. We therefore refer to it here as "the initiative."

**6.** One set of plaintiffs originally sued in Anchorage and are referred to collectively as the "Alakayak plaintiffs." The other set of plaintiffs originally sued in Dillingham and are referred to collectively as the "Kritz plaintiffs."

**7.** *See Hertz v. Cleary*, 835 P.2d 438, 440–41 n. 2 (Alaska 1992) (citing *In re Benny*, 791 F.2d 712, 720 (9th Cir.1986); *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 504 (3d Cir.1976)); *see also* Alaska R.App. P. 202(a). This commonsense approach allows review of an order when appellate jurisdiction would otherwise be deter-

mined by examining the very issues raised in the merits of the appeal. *See Hertz*, 835 P.2d at 440–41 n. 2; *see also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1923, at 508–09 (2d ed.1986).

**8.** The superior court's order stated:

IT IS HEREBY ORDERED that the motion of Alaskans for a Common Language, Inc., and U.S. English, Inc., for leave to intervene as parties defendant be, and it hereby is, denied. IT IS FURTHER ORDERED that movants may participate as *amici curiae* by filing an *amicus* brief on the merits at the time the State defendants file their opposition to plaintiffs' motions for summary judgment. The parties are to serve counsel for amici with all motions and memoranda. Movants may also present oral argument in support of any *amicus* brief they have filed.

When determining whether an order is final we focus on practicality: the judgment must dispose of the entire case, end the litigation, and leave nothing for the court to do.[9] We "look to the substance and effect, rather than form, of the rendering court's judgment, and focus primarily on the operational or 'decretal' language therein."[10] And when an order is ambiguous we look to its "substantial effect."[11] A party's ability to seek post-judgment review may determine whether an order on a motion to intervene is appealable.[12]

The superior court's order here prevents both movants from participating as parties. They cannot seek post-judgment review of any of the superior court's findings or conclusions. They cannot engage in full discovery or file their own motions. Even though the superior court's order states that the organizations "may seek leave to participate in other ways, upon a showing of necessity," the substantial effect of that order limits their participation to that of amici curiae. This requires them to seek permission to act and prevents them from enjoying a party's full slate of procedural rights. And even though the order was without prejudice, movants may only refile their intervention motion if circumstances change. By then movants might already be prejudiced by their inability to participate in discovery or pretrial matters. We conclude that the superior court's order is final and appealable and therefore that we have jurisdiction to review the order.

### B. Standing

Normally we review standing as a threshold issue.[13] However, the parties have raised standing as an issue within the context of whether either Alaskans for a Common Language or U.S. English has a sufficient interest in the matter to intervene under Civil Rule 24(a). We also therefore address the issue of standing when we discuss intervention as of right.

### C. Intervention as of Right under Alaska Civil Rule 24(a)

Alaskans for a Common Language and U.S. English moved to intervene as of right under Civil Rule 24(a).[14] We impose a four-part test to determine whether a movant is entitled to intervene as a matter of right: (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) the applicant must show that this interest may be impaired as a consequence of the action; and (4) the applicant must show that the interest is not adequately represented by an existing party.[15]

The superior court also stated:
> Amici may participate in oral argument by leave of court. That leave is hereby granted. In addition, given the public nature of this action, amici may attend any depositions that are scheduled and may seek leave to participate in this action in other ways, upon a showing of necessity, suitably expedited so as not to delay the proceedings.

**9.** See Greater Anchorage Area Borough v. City of Anchorage, 504 P.2d 1027, 1030 (Alaska 1972), overruled on other grounds by City of Juneau v. Thibodeau, 595 P.2d 626, 629 (Alaska 1979).

**10.** Greater Anchorage Area Borough, 504 P.2d at 1030–31 (footnote omitted).

**11.** Id. at 1032 ("We conclude that the substantial effect of the operational portion of the superior court's referral order was to completely dispose of the case pending before it.").

**12.** Cf. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 378, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (grant of permissive intervention subject to conditions was not appealable final order because no limitations interfered with intervenor's right to raise claims on post-judgment appeal).

**13.** See, e.g., Trustees for Alaska v. State, 736 P.2d 324, 327 (Alaska 1987).

**14.** Alaska Civil Rule 24(a) states:
> Intervention as of Right. Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**15.** See State v. Weidner, 684 P.2d 103, 113 (Alaska 1984).

We favor allowing access to courts and will liberally construe Alaska Civil Rule 24(a).[16]

■■■■ We review a denial of intervention as a matter of right for abuse of discretion if timeliness is at issue.[17] We apply our independent judgment if timeliness is not at issue and if the facts relevant to intervention are not disputed because then only questions of law are posed.[18] Here no issue of timeliness has been raised and no relevant facts are disputed. We therefore apply our independent judgment.

### 1. *Alaskans for a Common Language*

■■■ Alaskans for a Common Language claims an interest in the litigation because its members have invested a large amount of time and effort in protecting and encouraging the use of English by government in Alaska. It claims that "its members need to protect their initiative, the will of the Alaskan voters, and the purpose of the initiative." It particularly asserts that it represents organization directors and officers Fischetti and Jacobus, and that they have an interest because as initiative committee members they have a

duty to represent the initiative's signers and subscribers.

■■■■ An intervention movant's interest must be "direct, substantial, and significantly protectable" to satisfy Rule 24(a).[19] Generally when the government exercises its sovereign power to enforce and defend duly enacted laws, no other entity can have an interest sufficient to satisfy Civil Rule 24(a).[20] But when the people of a state have reserved the power of direct legislation, those who take responsibility for that direct legislation may have a sufficient interest.[21]

In *McCormick v. Smith*[22] we determined that the interest of a voter and a sponsor of a recall petition in pursuing the recall of an elected official was "of constitutional dimension" and that those individuals, as initiators of the recall, had a heightened interest in a lawsuit which would determine the fate of the recall attempt.[23] Similarly, Fischetti and Jacobus, as initiative committee members, have a constitutionally based, heightened interest in a lawsuit that will determine whether their successful initiative will be enforced. Fischetti and Jacobus, as initiative committee members, are also obliged by law to repre-

---

16. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1904, at 238 (1986) (discussing boundaries of liberal construction); *cf. Trustees for Alaska*, 736 P.2d at 327 (stating that we broadly interpret standing requirements because we favor increased accessibility to judicial fora).

17. *See Laborer's Local No. 942 v. Lampkin*, 956 P.2d 422, 437 n. 24, 437–39 (Alaska 1998) (reviewing for abuse of discretion where timeliness was at issue); *Mundt v. Northwest Explorations, Inc.*, 947 P.2d 827, 830 (Alaska 1997) (noting that federal courts have held that determination of timeliness is within discretion of trial judge); *Hertz*, 835 P.2d at 441 (holding that superior court did not abuse discretion in holding that motion was untimely).

18. *See McCormick v. Smith*, 793 P.2d 1042, 1044 n. 3 (Alaska 1990).

19. *See Weidner*, 684 P.2d at 113.

20. *See Keith v. Daley*, 764 F.2d 1265, 1269–70 (7th Cir.1985) (holding that lobby organization in Illinois legislature did not have protectable interest in lawsuit regarding constitutionality of law regulating abortion because only entities with sufficient interest were governmental bodies required to defend and enforce law of state); *Unit-*

*ed States v. 36.96 Acres of Land*, 754 F.2d 855, 858–60 (7th Cir.1985) (holding that lobby organization attempting to foster national legislation did not have right to intervene; only government had protectable interest in condemnation action between sovereign and private party); *Resort Timeshare Resales, Inc. v. Stuart*, 764 F.Supp. 1495, 1499 (S.D.Fla.1991) (holding that lobbyist was not entitled to intervene when asserted interest in law was too nebulous to create "real party in interest" in litigation challenging constitutionality of state statute requiring timeshare sellers to obtain real estate licenses).

21. *See Bates v. Jones*, 904 F.Supp. 1080, 1086 (N.D.Cal.1995) ("The individualized interest of official proponents of ballot initiatives in defending the validity of the enactment they sponsored is sufficient to support intervention as of right.") (citing *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir.1991) *vacated for mootness in Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)); *see also Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 629–30 (9th Cir. 1982).

22. 793 P.2d 1042 (Alaska 1990).

23. *See id.* at 1044.

sent the sponsors in all matters concerning the initiative.[24] This heightened, constitutionally based, and statutorily bolstered interest is a "direct, substantial and significantly protectable" interest as required by Civil Rule 24(a).

Moreover, the interests of Fischetti and Jacobus, as initiative committee members, may be impaired by this lawsuit. A preliminary injunction has already been granted by the superior court enjoining the initiative's enforcement. The Kritz and Alakayak plaintiffs seek a declaration that the initiative is void because it violates constitutional protections.[25] If the initiative were declared unconstitutional, its enactment would obviously be vitiated and the efforts of Jacobus and Fischetti, as initiative committee members, to enact a law requiring the use of English in government would be frustrated.

 We recognize a presumption of adequate representation when government entities are parties to a lawsuit because those entities are charged by law with representing the interests of the people.[26] That presumption may be rebutted and inadequate representation may be proved by a showing of collusion, adversity of interest, possible nonfeasance, or incompetence.[27] We held in *McCormick* that when a city accepted defeat in the trial court and failed to appeal an order enjoining it from pursuing a recall election, the city had relinquished its responsibility to defend the fundamental right to vote.[28] That relinquishment constituted "possible nonfeasance." [29]

 Here, the governor has a duty to defend a law that was enacted through the people's initiative powers.[30] That duty is executed by the attorney general.[31]

Nonetheless, two circumstances could raise questions in the mind of the public about whether the executive branch is committed to defending the constitutionality of the initiative with conviction and vigor. First, despite its recommendation that the lieutenant governor certify the initiative application, the Attorney General's Office questioned the constitutionality of the initiative. In the 1997 ballot litigation, the Attorney General's Office asserted that it was unclear whether and to what extent the Native American Languages Act protected the use of Native languages in Alaska from the requirements proposed in the initiative. It specifically questioned whether NALA protected a non-Native state employee's use of an Alaskan Native language. The Kritz plaintiffs, who now argue that the state's representation is adequate, argued in the 1997 ballot litigation that the Attorney General's Office has taken inconsistent positions on the effect of NALA on the initiative. Because the movants assert on appeal that one of the goals of the initiative is to protect the use of Native languages, the state's previous position on the reach of NALA is potentially relevant. The initiative's supporters could question whether the state could argue convincingly or with conviction that NALA protects the use of Native languages when it previously questioned NALA's reach.

Second, the governor personally opposed the measure publicly and unequivocally by

---

24. AS 15.45.030 provides:
 *Form of application.* The application shall include (1) the proposed bill to be initiated, (2) a statement that the sponsors are qualified voters who signed the application with the proposed bill attached, (3) the designation of an initiative committee of three sponsors *who shall represent all sponsors and subscribers in matters relating to the initiative,* and (4) the signatures and addresses of not less than 100 qualified voters.
 (Emphasis added.)

25. The Kritz plaintiffs allege that the initiative violates both the United States and the Alaska constitutions. The Alakayak plaintiffs allege only that it violates the Alaska constitution.

26. *See McCormick,* 793 P.2d at 1044.

27. *See id.* at 1045 (citing *Weidner,* 684 P.2d at 113).

28. *See id.* at 1043, 1045.

29. *See id.* at 1045.

30. *See* Alaska Const. art. III, § 16 ("The governor shall be responsible for the faithful execution of the laws.").

31. *See* AS 44.23.020.

stating that it was "unnecessary, unfair and unfortunate." The initiative's supporters could interpret that statement as an indication that the chief executive and the rest of the executive branch would not unequivocally defend the constitutionality of the initiative.

Based on the presumption of adequate government representation, we presume that the Attorney General's Office would not fail to defend the constitutionality of the initiative energetically and capably. Based on that same presumption, we also presume that the governor would not interfere. But Jacobus and Fischetti, as initiative committee members and sponsors, used the process of direct legislation to enact a law that the executive branch questioned and opposed. They cannot be faulted for wanting to guarantee that the initiative is defended zealously or for trying to ensure that the credibility of institutional arguments in favor of the initiative is not diminished by the previous comments from the executive branch. To them, and to the public in sympathy with the initiative, the governor's opposition and the Attorney General's Office's questions about the reach of NALA during the campaign, could create an appearance of adversity. Every strategic decision made by the Attorney General's Office in defending the legislation might be publicly questioned and second-guessed by the initiative's sympathizers. That this suspicion may be unfounded does not make it less inevitable.

The Attorney General's Office does not oppose intervention here. It objected to Alaskans for a Common Language's assertions that the ballot language was misleading, that the state would use the litigation for political purposes, and that its position on the meaning of the initiative was extreme. But the Attorney General's Office recognized that Alaskans for a Common Language had an interest, that it was uniquely qualified to raise arguments about the intent of the initiative, and that it might offer a different perspective that should be heard by the court.

■ Because the state does not oppose intervention, and because there might be a misperception by the initiative's supporters that the interests of Fischetti and Jacobus were not being defended vigorously by the executive branch, we conclude that a possible adversity of interest has been demonstrated.[32] In *McCormick* we determined that "possible nonfeasance" was sufficient to show inadequacy.[33] Here, because of the nature of direct legislation through the initiative process, the possible appearance of adversity of interest is sufficient to overcome the presumption of adequate representation. Indeed, we believe that a sponsor's direct interest in legislation enacted through the initiative process and the concomitant need to avoid the appearance of adversity will ordinarily preclude courts from denying intervention as of right to a sponsoring group.

We recognize that the Ninth Circuit has adopted a "virtual per se" rule allowing initiative sponsors to intervene in litigation challenging laws enacted by the initiative.[34] But we believe that Alaska courts should retain discretion to deny intervention in exceptional cases, because AS 15.45.060 places no limit on the number of initiative sponsors and therefore potentially opens the door to an unlimited number of motions for intervention. As an alternative to limiting intervention in those cases, courts may instead choose to reduce duplication by requiring those sponsors with substantially similar interests to consolidate their briefing and to participate through lead counsel.

As initiative sponsors, Fischetti and Jacobus have shown an interest that may be impaired and that may not be adequately represented by the state. Therefore they would have been entitled to intervene as of right under Civil Rule 24(a) if either had moved to intervene as an individual.

**32.** *See McCormick,* 793 P.2d at 1045.

**33.** *See id.*

**34.** *Yniguez,* 939 F.2d at 733 ("[I]t is worth noting that there is a virtual *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of litigation concerning that initiative to intervene pursuant to Fed.R.Civ.P. 24(a)."); *see also Bates,* 904 F.Supp. at 1086.

■ The remaining question is whether Alaskans for a Common Language may represent Fischetti and Jacobus in this litigation. The Alakayak plaintiffs assert that Alaskans for a Common Language lacks a sufficient interest to have standing in this litigation. In the same vein, the Kritz plaintiffs assert that Alaskans for a Common Language lacks standing to assert the interests of Fischetti and Jacobus because the interest injured under Civil Rule 24(a) must be that of the intervenor.[35] But Alaskans for a Common Language argues that it may represent the interests of its members Fischetti and Jacobus because it has associational standing.

■ Associations have previously represented the interests of their members in Alaska courts in lawsuits regarding initiative and recall attempts, although we have not previously specified criteria for associational standing.[36] The United States Supreme Court has held that an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[37] We adopt this test.

■ First, the movants must show that their members have either citizen-taxpayer or interest-injury standing.[38] Under the interest-injury approach a party must have an interest which is adversely affected by the complained-of conduct.[39] The degree of injury need not be great; an "identifiable trifle" is said to suffice to fight out a question of principle.[40] The interest may be economic, or it may be intangible, such as an aesthetic or environmental interest.[41] This threshold is lower than the interest needed to satisfy Rule 24(a) where the interest must be "direct, substantial, and significantly protectable."[42] Because we held above that Fischetti and Jacobus have a sufficient interest to satisfy Alaska Civil Rule 24(a), they necessarily also satisfy that element of the associational standing requirement.

Second, Alaskans for a Common Language seeks to represent the interests of initiative sponsors and signers Jacobus and Fischetti, who worked to enact the initiative as law. Alaskans for a Common Language was incorporated by Fischetti and Jacobus on the same day the initiative application was certified for the petition process. And the articles of incorporation of Alaskans for a Common Language state that its purpose is to promote the use of English as the official language of the State of Alaska. The enactment of the initiative is not only "germane" to Alaskans for a Common Language's organizational purposes, it is its primary organizational purpose.

Finally, the constitutionality of the initiative is a pure question of law which will not require direct testimony or other partic-

**35.** The Kritz plaintiffs also assert that U.S. English lacks standing. Because we hold that U.S. English lacks a sufficient interest to satisfy Alaska Civil Rule 24(a) and that it was not an abuse of discretion to deny permissive intervention to U.S. English, we need not reach this question.

**36.** *See, e.g., Brooks v. Wright,* 971 P.2d 1025, 1026 (Alaska 1999) (citizens and community organizations brought suit to remove initiative from ballot); *von Stauffenberg v. Committee for Honest & Ethical Sch. Bd.,* 903 P.2d 1055, 1057 (Alaska 1995) (organizations comprised of concerned citizens and voters brought suit to have recall petition declared valid and to order clerk to proceed with election); *Municipality of Anchorage v. Citizens for Representative Governance,* 880 P.2d 1058, 1061 (Alaska 1994) (organization opposing recall sued to block recall election and organization supporting recall intervened); *Citizens Coalition for Tort Reform, Inc. v. McAlpine,* 810 P.2d 162, 163–64 (Alaska 1991) (organization sued to force certification of initiative sup-

porting tort reform); *Thomas v. Bailey,* 595 P.2d 1, 2 n. 2 (Alaska 1979) (organization and individual sued to determine constitutionality of initiative).

**37.** *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

**38.** *See Trustees for Alaska,* 736 P.2d at 327.

**39.** *See id.* In *Trustees for Alaska,* we discussed standing in the context of plaintiffs. *See id.* Here, the organizations move to intervene as defendants but the analysis does not change.

**40.** *See id.*

**41.** *See id.*

**42.** *Weidner,* 684 P.2d at 113.

ipation by Fischetti or Jacobus. Therefore, Alaskans for a Common Language meets the requirements for associational standing and may represent the interests of Fischetti and Jacobus in this litigation.[43]

### 2. U.S. English

■ U.S. English asserts an interest in promoting "the use of English on a national basis." Unlike Alaskans for a Common Language, which has established that it has direct ties with initiative committee members Fischetti and Jacobus, the record does not show that U.S. English has a direct interest in the current litigation that would warrant intervention as a matter of right. The record fails to show, and U.S. English has not asserted, that its directors, officers, or incorporators were sponsors of the initiative in Alaska or were members of the initiative committee. Alaskans for a Common Language established that it has a "direct" interest in the litigation before the superior court. But U.S. English has not established that its interest is any greater than a generalized interest of a political nature.[44] Although U.S. English's Alaskan members may hope to defend the Alaska initiative to further U.S. English's national interest, we do not consider that interest to be sufficient. Also, unlike Alaskans for a Common Language, U.S. English did not previously undertake civil litigation to advance its interest in the initiative.

### D. The Superior Court Did Not Abuse Its Discretion in Denying Permissive Intervention to U.S. English.

■ Intervention may be permitted under Alaska Civil Rule 24(b) upon timely application when the applicant's claim or defense and the main action have a common question of law or fact; the court must also determine whether intervention would impair the rights of the original parties by causing undue delay or prejudice.[45] We recognize that "additional parties are always the source of additional questions, briefs, objections, arguments and motions, [and] where no new issues are presented, the most effective and expeditious way to participate is by a brief amicus curiae and not by intervention."[46] Because the superior court concluded that U.S. English failed to raise any new issues, we hold that the superior court did not abuse its discretion when it denied U.S. English permissive intervention but allowed it to participate as an amicus curiae.

### IV. CONCLUSION

For these reasons we REVERSE the denial of intervention to Alaskans for a Common Language, and REMAND with instructions to grant its motion to intervene under Alaska Civil Rule 24(a). We AFFIRM the denial of intervention under Alaska Civil Rule 24(a) and (b) to U.S. English.

---

43. Because we decide that Alaskans for a Common Language has a right to participate as a party to represent the interests of Fischetti and Jacobus, we do not need to decide whether the organization, standing alone, could intervene to represent the broader interest of its Alaskan membership.

44. See Keith, 764 F.2d at 1269–70 ("Rule 24(a) precludes a conception of lawsuits, even 'public law' suits, as necessary forums for such public policy debates.").

45. Alaska Civil Rule 24(b) states:

*Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

46. *Weidner,* 684 P.2d at 114.